IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ENRIQUE CHAN, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　/ | No. CR 05-00375 SI<br><br>**ORDER REGARDING DEFENDANTS'**<br>**MOTIONS** |

On February 17, 2006, the Court heard oral argument on various motions filed by defendants. After careful consideration of the papers and the arguments of counsel, the Court hereby DENIES the motions.

**BACKGROUND**

On June 16, 2005, a federal grand jury returned a sealed indictment against a total of 20 individuals. Count One of the indictment charged moving defendants Park, Hom, Lee, and Vuong, along with 15 others, with conspiring, between approximately January 2001 and June 16, 2005, to cultivate and traffic in one thousand or more marijuana plants in violation of 21 U.S.C. § 846. Count Two of the indictment charged several defendants, including non-moving defendant Richard Wong, with conspiring to possess with intent to distribute and distribute MDMA (ecstasy) in violation of 21 U.S.C. § 846. Count Three charged moving defendant Vuong and co-defendant Richard Wong with conspiring to engage in money laundering in violation of 18 U.S.C. § 1956(h).

On June 22, 2005, government agents executed 23 federal search warrants at locations in San Francisco, South San Francisco, San Jose, Santa Clara, and San Bruno. The search warrants encompassed 13 residences (including the residence that moving defendant Edward Park was known

to share with co-defendant Enrique Chan, and the residences of moving defendants Darrick Hom and David Lee); seven businesses; and four marijuana grow sites. *Scoble Decl.* ¶ 4. The following day, a twenty-fourth federal search warrant was executed at a storage facility in Alameda, California. *Id.*

Of the seven businesses searched on June 22, 2005, three were cannabis clubs in San Francisco, California: (1) Medicinal Herbal Remedy, 1939 Ocean Avenue, San Francisco; (2) Sunset Medicinal Resource Center, 445 Judah Street, San Francisco; and (3) Herbal Relief Center, 1545 Ocean Avenue, San Francisco. *Id.* The search warrants executed at the three cannabis club businesses resulted in seizure of evidence related to the cultivation and distribution of marijuana; also seized at one location were 50 MDMA pills. *Id.* at ¶ 5. The evidence included:

(1) at Sunset Medicinal Resource Center, 445 Judah Street, San Francisco: approximately 1,383 marijuana plants and 129 unrooted marijuana clones;

(2) at Herbal Relief Center, 1545 Ocean Avenue, San Francisco: approximately 1,278 marijuana plants, 308 rooted clones and 200 unrooted clones; and

(3) at Medicinal Herbal Remedy, 1939 Ocean Avenue, San Francisco: a small amount of marijuana, and 50 MDMA pills.

*Id.* In a follow-up state search warrant executed at 1943 and 1945 Ocean Avenue, which are part of the same building as 1939 Ocean Avenue (Medicinal Herbal Remedy), officers and agents seized approximately 732 marijuana growing plants. *Id.* The probable cause showing for that state search warrant linked the commercial premises at 1943 and 1945 Ocean Avenue to Bart Alexis, the ostensible owner (according to public filings) of Medicinal Herbal Remedy. *Id.*

On or about October 13, 2005, a federal grand jury returned a superseding indictment which added Vince Ming Wan to Count One (conspiring to cultivate, to possess with intent to distribute, and to distribute 1,000 or more marijuana plants). The superseding indictment also extended the alleged date of the conspiracy to include the date on which the 23 federal search warrants had been executed, June 22, 2005. *Id.* at ¶ 8.

Now before the Court are the following motions: (1) defendant Park's Motion to Dismiss, or Alternatively, Motion for Discovery re Selective Prosecution; (2) defendants Hom and Lee's Motion for Discovery and Motion to Dismiss for Selective Prosecution; (3) defendant Park's Motion to Dismiss

Indictment for Violation of Defendant Park's Right to Due Process and Equal Protection under the Fifth Amendment; (4) defendant Vuong's Motion to Sever; and (5) defendant Vuong's Motion for Discovery. Various co-defendants have joined in all of the pending motions, except that no one has joined in Vuong's motion to sever.

**DISCUSSION**

**1.    Defendants' motions to dismiss for selective prosecution, or for discovery**

Defendants Park, Hom and Lee have filed motions to dismiss for selective prosecution, contending that they are being prosecuted because they are Asian-American. A number of co-defendants have joined in the motion.

Defendants assert that they were improperly selected for prosecution based upon their race, and that the evidence of such selective prosecution lies in the fact that the government has not prosecuted any non-Asian-American owned cannabis clubs in San Francisco, but that the government has seized and closed the only three Asian-American-run cannabis clubs in San Francisco. Defendants also contend that the government has repeatedly publicly described this case as a "criminal enterprise" or "crime organization," and either mentioned the fact that the defendants are Asian (or Asian-American) or listed the defendants' names, which are obviously Asian. Defendants argue that this was done to invoke the image of an Asian organized crime ring or an Asian gang or mafia. Defendants also argue that the Caucasian-run cannabis clubs are "highly activistic and politically outspoken," while the three Asian-American clubs were "silently observing California law," and thus they were the most politically vulnerable.

As the courts have repeatedly recognized, there is a "presumption that the Attorney General of the United States and the United States Attorneys are properly discharging their official duties and not acting with a racial bias contrary to the commands of the Constitution." *United States v. Turner*, 104 F.3d 1180, 1184 (9th Cir. 1997). The Supreme Court held in *United States v. Armstrong* that in order to prevail on a selective prosecution claim, a criminal defendant must prove that the prosecution both had a discriminatory effect and was motivated by a discriminatory purpose. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). Both prongs must be demonstrated for the defense to apply. *See*

3

1    *Turner*, 104 F.3d at 1184. Alternatively, in order to obtain discovery regarding selective prosecution,
2    defendants must produce "some evidence tending to show the existence of the essential elements" of
3    a selective prosecution claim. *Armstrong*, 517 U.S. at 471.

4    Defendants' evidence consists of the following: (1) news articles from June 2005 regarding the
5    case which contain statements by government officials that defendants are engaged in a "criminal
6    enterprise," make reference to "international drug dealing and money laundering," and list the
7    defendants' names; (2) a page from a transcript of a proceeding before Judge Patel regarding the
8    government's application for an order authorizing the interception of wire communications during which
9    AUSA Scoble stated that "it's an Asian group mainly," when referring to a number of individuals,
10   including defendants; and (3) declarations from Nedra Ruiz (counsel for Darrick Hom); Laurence
11   Jeffrey Lichter (counsel for David Lee), and J. Tony Serra (counsel for Edward Park).

12   Ms. Ruiz's declaration asserts, *inter alia*, the following: (1) counsel has been informed that the
13   three cannabis clubs searched in June 2005 were the only Chinese-American medicinal marijuana
14   dispensaries in San Francisco; (2) counsel has been informed that these three dispensaries were staffed,
15   owned and operated by Chinese-Americans; (3) all of the other cannabis clubs in San Francisco, which
16   were not searched as part of the investigation, are not owned by Chinese-Americans[1]; (4) defendant
17   Hom has informed his attorney that neither he nor co-defendants Brian Lee or Chi Duc Hac have ever
18   been involved in a gang; and (5) counsel has reviewed hundreds of pages of taped transcribed telephone
19   conversations and none of the conversations provide any proof that Hom or any co-defendants engaged
20   in "bulk money laundering" or were members of any organized Asian gang. *See generally* Ruiz Decl.

21   The declarations of Mr. Lichter and Mr. Serra are similar. Mr. Lichter also states, *inter alia*, that
22   "[t]here is unanimous agreement in the medical marijuana community that the raids and indictments in
23   this matter have shut down dispensaries only distinguished by the racial background of the vast majority
24   of participants." Lichter Decl. ¶ 8. In addition, Mr. Lichter's declaration requests the Court to "take
25   notice that there is not now or at any time has there been any evidence that the medical facilities or the
26   marijuana-growing facilities or the individuals involved ever served as 'fronts' for the selling of MDMA

---

[1] The earlier two assertions concerning ethnicity of ownership or management were attributed to counsel "having been informed" of their truth. This assertion is not attributed to anything.

or any other hard drugs, or money laundering ." *Id.* at ¶ 12. Mr. Serra's declaration states, *inter alia*, that he "believes that the government has purposely selected defendants herein because of their race," and that "had the defendants not been Asian, the search of the cannabis clubs and the indictment relative to the marijuana charge would not have ensued." Serra Decl. at 2.

The Court takes defendants' charges of selective prosecution very seriously. However, the Court concludes that defendants have failed to submit "some evidence" tending to show the existence of discriminatory effect or discriminatory purpose. The Court finds the Ninth Circuit's decision in *United States v. Turner* instructive. In that case, the defendants were African-Americans charged with the distribution of crack cocaine. The defendants claimed selective prosecution based on race, and submitted (1) a memorandum of a paralegal in the Federal Public Defender's Office for the Central District of California stating that an inspection of closed cases of crack cocaine prosecutions defended by that FPD in 1991, 1992 and 1993 showed 47 African-Americans, 5 Latinos and no white defendants had been charged with crack cocaine offenses; (2) newspaper articles and an NPR report on the "racial divide" in crack cocaine prosecutions; and (3) a study titled "Preliminary Data on Race and Crack Charging Practices in Los Angeles," which showed that between 1988 and 1992, 3% of the 8,250 persons charged with the sale of crack by the Los Angeles District Attorney were Anglo, 53% were African-American, 43% were Latino, and 1% were "other," and the comparable federal breakdown of 43 persons charged was 0% Anglo, 83% African-American, 16% Latino, and 0% "other." *Turner*, 104 F.3d at 1183.

The Ninth Circuit held that the *Turner* defendants had failed to meet the evidentiary threshold entitling them to discovery on selective prosecution. The court held that the simple fact that in a particular year only African-Americans had been defended on crack cocaine charges by the Federal Public Defender for the Central District "did not advance a defense of selective prosecution without further consideration of the sociological factors affecting the pattern of crime and without a showing that similarly-situated defendants of other races had been left unprosecuted." *Id.* at 1184-85. The *Turner* court held that the defendants' evidence was insufficient to justify discovery because,

> [defendants' evidence], based on a statistically unimpressive number of federal defendants, shows at most that the state of California did prosecute a small number of Caucasian crack cocaine sellers. Nothing in the report, however, shows whether these

5

sellers were similarly situated to the sellers chosen for prosecution here. In particular, there is no showing at all that the crack cocaine sellers prosecuted by California were gang members who sold large quantities of crack; so the principal characteristic of the federal defendants is omitted.

*Id.* at 1185.

Here, defendants have failed to submit any evidence that non-Asian-Americans could have been, but were not, charged with the counts alleged in the indictment, nor have defendants submitted any evidence of discriminatory purpose showing that "the government undertook a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (internal quotations and citations omitted).[2] Indeed, defendants' evidence is far weaker than the evidence submitted by the defendants in *Tucker*. The fact that AUSA Scoble or other government officials have referred to defendants as "Asian" or "Asian-American," or that they have disclosed defendants' names to the media, is not evidence of discriminatory intent.[3] Nor is the simple fact that a majority of the defendants are Asian-American evidence of selective prosecution.

The declarations of counsel are largely inadmissible because they are replete with hearsay and counsel's subjective beliefs, and because they lack foundation for many of the statements contained therein. Defendants have failed to submit any competent evidence that the three medicinal marijuana dispensaries that were searched were owned by Chinese-Americans, or that these three dispensaries are the only dispensaries in San Francisco that are owned by Chinese-Americans. Even if defendants had established those facts with admissible evidence, however, that showing would be insufficient to warrant any discovery. *See id*.

For all of these reasons, the motions to dismiss for selective prosecution, or alternatively for discovery, are DENIED.

---

[2] The Court notes that at the hearing on this motion, Park's counsel stated that she was aware of Caucasians who could have been, but were not, charged with conspiracy to cultivate, possess and distribute 1,000 or more marijuana plants. However, defendants did not submit any such evidence.

[3] The Court notes that many of defendants' arguments challenge the validity of the wiretap and/or contend that defendants are not guilty of the counts charged in the indictment. These arguments are unavailing in the context of the instant motions, and can be pursued in a separate challenge to the wiretap and other appropriate motions, and, if this case proceeds to trial, at that stage.

6

**2.     Defendant Park's Motion to Dismiss for Violation of Due Process and Equal Protection**

Defendant Park moves to dismiss the indictment on the grounds that the classification of marijuana in the Uniform Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, (hereinafter "CSA"), is arbitrary and irrational, and denies him Due Process and Equal Protection of the law pursuant to the Fifth Amendment of the United States Constitution. Park further requests an evidentiary hearing. All of Park's co-defendants have joined in the motion.

The CSA classifies controlled substances according to their inclusion in one of five schedules. The listing of a substance in one of the five schedules depends on the extent to which the particular drug has a currently accepted medical use, the level of its potential for abuse, and the degree of psychological or physical dependence. *See* 21 U.S.C. § 812(b). A drug is included in Schedule I, the most restrictive schedule, if it "has a high potential for abuse," "has no currently accepted medical use in treatment in the United States," and has "a lack of accepted safety for use under medical supervision." *Id.* at § 812(b)(2)(A). In 1970, Congress classified marijuana as a Schedule I controlled substance and it has remained a Schedule I substance ever since. *See id.* at § 812(c)(10) and (17).[4]

Defendant contends that it is irrational and arbitrary for marijuana to be classified in Schedule I. Defendant has submitted studies and reports which state, *inter alia*, that marijuana does not have a high potential for abuse, that marijuana has currently accepted medical uses, and that marijuana can be safely used under medical supervision. Defendant argues that this evidence demonstrates that there is no rational basis to classify marijuana in Schedule I.

The Ninth Circuit has previously considered and rejected these arguments. In *United States v. Miroyan*, a defendant challenged the constitutionality of the Controlled Substances Act and argued that marijuana "cannot rationally be deemed to meet the criteria required for a Schedule I substance." 577 F.2d 489, 495 (9th Cir. 1978). The court held, "[w]e need not again engage in the task of passing

---

[4] The initial classification of marijuana as a Schedule I substance was made by the Congress in 1970 at the time the CSA was enacted. The Act provides the Attorney General of the United States with the authority to classify or reclassify substances. 21 U.S.C. § 811. That authority has been delegated to the Administrator of the Drug Enforcement Administration. 28 C.F.R. § 0.0100(b). Administrative review of the propriety of classifications may be had in the D.C. Circuit. *See generally Alliance for Cannabis Therapeutics v. Drug Enf. Admin.*, 15 F.3d 1131, 1133 (D.C. Cir. 1994).

judgment on Congress' legislative assessment of marijuana. As we recently declared, '(t)he constitutionality of the marijuana laws has been settled adversely to (McGinnis) in this circuit.'" *Id.*, *quoting United States v. Rogers*, 549 F.2d 107, 108 (9th Cir. 1976)).[5] The Court is constrained by *Miroyan*, and accordingly DENIES defendant's motion to dismiss.[6]

### 3. Defendant Vuong's Motion for Severance

Defendant Vuong is charged under Count One of the Superseding Indictment with conspiring to cultivate, possess with intent to distribute and distribute marijuana, a violation of 21 U.S.C. § 846, and under Count Three with conspiring with co-defendant Richard Wong to engage in money laundering by using their checking accounts to pay rent on warehouses where marijuana was cultivated, in violation of 18 U.S.C. 1956(h).

Vuong has filed a motion pursuant to Federal Rule of Criminal Procedure 14 to sever his trial from his 20 co-defendants. Vuong contends that severance is necessary to "avoid the prejudice caused by a large and lengthy trial with 21 defendants spanning over four years; the taint of MDMA charges in a marijuana case, and because the Government does not have a case of conspiracy against defendant beyond his de minimis contacts with a few of the other charged defendants beyond November 2003." Motion at 2. Vuong further moves to sever his trial because, according to pretrial discovery, the

---

[5] Every other federal court of appeal to have considered the issue has rejected challenges to the classification of marijuana. *See, e.g., United States v. Greene*, 892 F.2d 453, 455 (6th Cir. 1989); *United States v. Fry*, 787 F.2d 903, 905 (4th Cir.), *cert. denied*, 479 U.S. 861 (1986); *United States v. Fogarty*, 692 F.2d 542, 547 (8th Cir. 1982); *United States v. Middleton*, 690 F.2d 820, 823 (11th Cir. 1982); *see also Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131, 1133 (D.C. Cir. 1994) (upholding DEA's five-part test for determining currently accepted uses for marijuana and upholding Administrator's final order denying petition to reclassify marijuana out of Schedule I).

[6] The Court in *Miroyan* asserted that the constitutional validity of the classification of marijuana as a Schedule I substance had been settled by prior Ninth Circuit decisions, citing several cases. The only cited Ninth Circuit cases providing analysis, however, dealt with constitutional challenges other than the specific contention that placing marijuana on Schedule I was without rational basis. *See United States v. Rodriquez-Camacho*, 468 F.2d, 1220, 1221-22 (9th Cir. 1972)(upholding marijuana conviction against constitutional challenges based on vagueness and lack of interstate commerce nexus); *United States v. Rogers*, 549 F.2d 107, 108 (9th Cir. 1976)(per curiam rejection of challenge to classification of marijuana, without analysis, on the basis of *Rodriquez-Camacho*); and *United States v. Lustig*, 555 Ff.2d 737, 750 (9th Cir. 1977)(upholding constitutionality of placing cocaine on Schedule I, based on *Rogers*). Defendant has requested an evidentiary hearing on whether marijuana meets the criteria for classification in Schedule I. In light of the holding of *Miroyan*, this Court will not conduct such a hearing absent further guidance from the Ninth Circuit.

Government intends to introduce into evidence statements made by other co-defendants under the co-conspirator exception to the hearsay rule. Vuong contends that such statements do not fall within the co-conspirator exception and that their admission at a joint trial will prejudice him and deprive him of his Sixth Amendment right to confront and cross-examine witnesses. Finally, Vuong moves to sever his trial because he wishes to proceed to trial in a speedy fashion rather than await anticipated lengthy delays caused by determinations as to the legitimacy of the evidence seized pursuant to wiretap and other pretrial motions brought by co-counsel.

The decision whether to sever pursuant to Rule 14 is committed to the discretion of the Court. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). Severance may be appropriate to avoid prejudice to a defendant; however, Rule 14 "sets a high standard for a showing of prejudice." *Id.* at 846; *see also United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir. 1987) ("The test for abuse of the district court is whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial.") (internal citation and quotation omitted). The Ninth Circuit has stated,

> Inquiry into the prejudicial effect of a joint trial involves consideration of several factors, including: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004).

The Court concludes that severance is not appropriate. The government states that it does not anticipate trying this entire case in one large trial, but rather in trial groups to be determined after the resolution of various defendants' challenges to the wiretap. Thus, Vuong's concerns about the scope and length of the trial are premature, and may be eliminated by the trial groupings.[7] With respect to Vuong's concerns about the "taint" of MDMA charges, as the government notes, the MDMA conspiracy charged in Count Two involves only three of the twenty-one defendants, is limited to a distinct and relatively brief time period (May 2005), and expressly charges a different drug. The Court believes that

---

[7] Vuong may renew his motion for severance after the government proposes trial groupings.

9

the jury will be able to compartmentalize the evidence regarding Count 2, and that limiting instructions can eliminate any possible prejudice.

Vuong and the government dispute how much of the evidence pertains to Vuong, and whether there is evidence regarding Vuong after November 2003. Even if Vuong is correct that his role in the alleged conspiracies was relatively small, however, a "joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *Id*. at 1242. Here, the Court finds that it would be inefficient to sever the case against Vuong because he is charged with under two of the three conspiracy counts in the indictment.

Vuong also contends that the government plans to introduce co-conspirator statements at trial in violation of his Sixth Amendment rights. However, Vuong acknowledges that Federal Rule of Evidence 801(d)(2)(E) provides that a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay, and that statements properly admitted under Rule 801(d)(2)(E) do not violate a defendant's Sixth Amendment rights. *See Bourjaily v. United States*, 483 U.S. 171, 182-83 (1987); *see also United States v. Lujan*, 936 F.2d 406, 410 (9th Cir. 1991) ("there is no Confrontation Clause problem raised since the requirements of Rule 801(d)(2)(E) are satisfied"). Instead, Vuong argues that "[c]ounsel does not believe the government can prove [the] foundational requirements" for any such statements to be introduced at his trial.

The problem with Vuong's argument is two-fold. First, if Vuong is correct that the government cannot prove the foundational requirements for statements to be admitted under Rule 801(d)(2)(E), then those statements will not be admitted at trial and all of Vuong's concerns disappear; conversely, if the government proves the foundational requirements for these statements, they will be admitted and, under the case law, will not violate Vuong's Sixth Amendment rights. Second, Vuong's arguments regarding admissibility are premature and wholly speculative. There is no trial date set, and Vuong has not identified any specific statements that the government wishes to introduce. Vuong requests that the Court order the government to identify the co-conspirator statements it intends to introduce at trial, and to make a preliminary foundational showing regarding these statements. However, there is no need to

1  undergo such an exercise at this stage of the case when there is no trial date set and when there are a
2  number of pretrial motions still to be filed and decided. Vuong may raise his objections to the
3  admissibility of co-conspirator statements when the issue is actually ripe for decision.

4  Finally, Vuong contends that his case should be severed because he is anxious to proceed to trial
5  and does not want to wait for "anticipated lengthy delays" caused by his co-defendants' planned motions
6  to challenge the wiretap and other pretrial motions. The Court is mindful of Vuong's concerns, and of
7  the requirements of the Speedy Trial Act. Vuong and his co-defendants have agreed that this case is
8  factually complex, and Vuong has stipulated that all time from the inception of this case until January
9  20, 2006 should be excluded from the Speedy Trial Act computation.[8] The Court has scheduled
10 argument on the motions challenging the wiretap, along with all other pretrial motions, for May 26,
11 2006. The Court does not anticipate that there will be "lengthy delays" associated with these motions,
12 and intends to schedule trial dates for the trial groups as soon as is practicable.

13 Accordingly, for the foregoing reasons, defendant's motion is DENIED.

### 4.  Defendant Vuong's Motion for Discovery

Defendant Vuong has filed a motion for discovery pursuant to Federal Rules of Criminal Procedure 16(a)(1)(E) and 12(b)(4)(B) seeking various items, including a trial exhibit list, a witness list and production of all *Jencks* material, disclosure of wiretap evidence to be used at trial, expert witness reports and qualifications, informer testimony (including a statement whether co-defendant Thy Q. Nguyen or any other co-defendant will testify at trial), 404(b) evidence, coconspirator statements to be offered at trial, *Brady/Giglio* evidence, statements of the defendant under Rule 16, and Vuong's criminal record.

The government contends that the motion is premature because there is no trial date, some of the discovery (such as a list of co-defendants who will testify, and a list of all expert witnesses) cannot be produced yet, and other discovery (such as exhibit and witness lists, and *Jencks* material) will depend

---

[8] Defendants' motions to dismiss the indictment were originally scheduled for hearing on January 20, 2006. The motions were rescheduled for hearing on February 17, 2006. Pursuant to 18 U.S.C. § 3161(h)(1)(F), time continues to be excluded until resolution of these motions.

11

on trial groups. The government also states that it has forwarded to Vuong a copy of his criminal history printout, and that it has already produced wiretap recordings, line sheets, and all of defendant's statements of which it is aware. The government states that as the case moves closer to trial, the government will be happy to work with defense counsel to provide exhibit and witness lists, *Jencks* material, and other requested matters within the applicable limits set by law.

The Court agrees that defendant's motion for discovery is premature, and accordingly DENIES the motion WITHOUT PREJUDICE. Once trial groups are proposed and a trial date is set, Vuong may renew his motion if appropriate.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendants' motions. (Docket Nos. 150, 220, 225, 254 and 256).

**IT IS SO ORDERED.**

Dated: March 17, 2006

SUSAN ILLSTON
United States District Judge